MARION D. KESSLER *v.* STATE OF INDIANA.

[No. 3-1275A272. Filed October 14, 1976.]

*Carl N. Lundberg,* of LaGrange, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles M. Russell,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendant-appellant Marion D. Kessler was charged in a four-count information with the offenses of fleeing a police officer,[1] speeding,[2] possession of burglary tools,[3] and operating a motor vehicle without a valid Indiana driver's license.[4] Trial by the court resulted in a finding of not guilty of fleeing a police officer, a finding of guilty of speeding, and a finding of guilty of possession of burglary tools. The charge of operating a vehicle without a driver's license was dismissed upon motion of the State. The trial court fined Kessler $25 and costs on the speeding court, and committed him to the Department of Correction for a term of not less than two nor more than fourteen years on the possession of burglary tools count. Thereafter, Kessler's motion to correct errors directed to the conviction for the crime of possession of burglary tools was overruled, and this appeal was perfected.

The evidence most favorable to the State reveals that on January 22, 1975, at approximately 1:50 A.M., LaGrange County Deputy Sheriff James W. Stout was patrolling La-Grange, Indiana, in a marked patrol car when he observed what later proved to be Kessler's automobile parked with its headlights on in an alley behind the town's business district. Deputy Stout was northbound in the alley; Kessler's automobile was facing south. When Deputy Stout was approximately

1. IC 1971, 35-21-2-1 (Burns Code Ed.).
2. IC 1971, 9-4-1-57 (Burns Code Ed.),
3. IC 1971, 35-13-8-1 (Burns Code Ed.).
4. IC 1971, 9-4-5-1 (Burns Code Ed.).

one and one-half blocks away Kessler noticed the patrol car, backed from the alley and proceeded east on Michigan Street. Deputy Stout followed for approximately three blocks, and then engaged the red lights and siren because it appeared that Kessler was attempting to avoid the patrol car. Instead of stopping, Kessler proceeded to State Road 9 and attempted to elude Deputy Stout. After a chase during which speeds reached 110-miles per hour, Kessler stopped his car in the traveled portion of the highway. Kessler and a passenger, Daniel Phillipson, obeyed Deputy Stout's command to alight from the automobile and lie on the ground. During a subsequent visual inspection of the interior of Kessler's automobile, Deputy Stout observed a butcher knife on the floor of the driver's side, and two pry bars, a screwdriver and a small sledge hammer on the back seat.

On appeal, Kessler contends that evidence offered by the State to prove he had previously been convicted of a felony was erroneously admitted and, even if properly admitted, was insufficient to prove a conviction. He also contends that certain portions of Daniel Phillipson's testimony were erroneously admitted in evidence, and that the totality of the evidence failed to prove he possessed the tools with the intent to commit burglary.

The statute under which Kessler was convicted, IC 1971, 35-13-8-1 (Burns Code Ed.), reads as follows:

> "Burglary—Possession of tools by convict.—If any person previously convicted of a felony be found having in his possession any burglar tools or implements with intent to commit the crime of burglary, such person shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned not less than two [2] years nor more than fourteen [14] years, and the possession of such tools or implements shall be prima facie evidence of the intent to commit burglary."

To prove Kessler had previously been convicted of a felony, the State called Whitley County Probation Officer Susan Bagan as a witness. Ms. Bagan testified that she had con-

ducted a presentence investigation of Kessler in connection with a criminal case tried by the Whitley Circuit Court and that he was the same person who stood charged in this case. During her testimony, the State offered in evidence the docket sheet of the Whitley Circuit Court case, "State of Indiana v. Marion D. Kessler, Cause No. S-73-16", which was admitted over appellant's objection. Such docket sheet reads, *inter alia*, as follows:

"5-14-73   *   Comes now State of Indiana by Prosecuting Attorney. Comes now defendant in person in custody of the Sheriff of Whitley County together with his court appointed attorney, Richard W. Gates. Defendant advised of his constitutional rights and now enters plea of guilty to Count No. 2, being the charge of theft. Pre-sentence investigation ordered.

"5-18-73   *   Comes now Whitley County Probation Officer and files pre-sentence investigation report.

"5-21-73   *   Comes now State of Indiana by Prosecuting Attorney. Comes now defendant in person and by counsel. Defendant having heretofore pled guilty to the offense of theft and the Court having read and considered the pre-sentence investigation report, IT IS NOW ORDERED that for said offense of theft that the defendant be and hereby is committed to the care and custody of the Department of Corrections of the State of Indiana for not less than one (1) year nor more than ten (10) years and that he be fined $1.00 plus the costs of this action and disfranchised for a period of two (2) years. IT IS FURTHER ORDERED that the defendant be given credit on said sentence in the amount of 22 days which defendant spent in jail prior to sentencing. Sheriff of Whitley County ordered to carry out execution of this order."

Kessler contends that the docket sheet should not have been admitted into evidence because the identity of the keeper thereof was not established, stressing that, in any event, Susan Bagan was not the proper keeper. Additionally, he contends that even if the docket sheet were properly admitted, it failed to prove a prior conviction for two reasons. First,

the docket sheet makes no reference to a judgment. Second, the docket sheet does not affirmatively show venue, and therefore does not establish the jurisdiction of the Whitley Circuit Court.

Kessler's contention that the docket sheet was inadmissible because not authenticated by its keeper must fail. Ind. Rules of Procedure, Trial Rule 77(B) reads, in pertinent part:

> "Civil docket. The clerk of the circuit court and the clerk serving a judge whose regular courtroom is located outside the courthouse or its environs shall keep a book known as 'civil docket' of such form that the file number of each case or proceeding shall be noted on the folio of the docket whereon the first entry of the action is made. All papers filed with or transmitted to the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, judgments, enforcement proceedings, executions and returns thereon shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number and the date of filing. Such entries shall be brief but shall show the nature of each paper filed or writ issued and the bare substance of each order or judgment of the court and of the returns showing execution of process. ***."

Accordingly, the Clerk of the Whitley Circuit Court is the keeper of that court's "civil docket", and a copy thereof, when certified as true and complete pursuant to IC 1971, 34-1-17-7 (Burns Code Ed.), is admissible in evidence.[5]

An examination of the record before us reveals that the copy of the Whitley Circuit Court docket sheet was certified

---

5. IC 1971, 34-1-17-7 (Burns Code Ed.), reads as follows:
"Copies of records in public offices of this state.—Exemplifications or copies of records, and records of deeds and other instruments, or of office books or parts thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office of this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his custody, and the seal of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer."

in accordance with IC 1971, 34-1-17-7, *supra,* and was properly admitted in evidence.

Kessler also attempts to argue that the copy of the docket sheet should not have been admitted because a certified copy of the complete record of the prior proceeding would have been the best evidence. However, he failed to object on that ground at trial, and has therefore waived that particular aspect of the admissibility argument. *Garner* v. *State* (1975), 163 Ind. App. 573, 325 N.E.2d 511. Notwithstanding such deficiency, it is not necessary to place the complete record or transcript into evidence to show a prior conviction.

Kessler's contention that the docket sheet did not refer to a judgment is without merit. The portion of the docket sheet reproduced above shows that Kessler pled guilty on May 14, 1973, to theft, with judgment entered on such plea on May 21, 1973.

Kessler's argument that the docket sheet failed to prove the Whitley Circuit Court had jurisdiction of the case is also without merit. The word "jurisdiction", when used in connection with place of trial or venue, means jurisdiction of the particular case, not jurisdiction of the subject-matter. *Brown* v. *State* (1941), 219 Ind. 251, 37 N.E.2d 73. Jurisdiction of the particular case was conferred on the Whitley Circuit Court by the filing of the information. *Treadwell* v. *State* (1972), 152 Ind. App. 289, 283 N.E.2d 397 (transfer denied). The Whitley Circuit Court proceeded to judgment, and it therefore must be conclusively presumed to have decided it had jurisdiction to proceed. *Haden* v. *Dowd, Warden* (1939), 216 Ind. 281, 23 N.E.2d 676. The LaGrange Circuit Court has no jurisdiction to determine whether the Whitley Circuit Court acted erroneously. *Haden* v. *Dowd, Warden, supra.* Consequently, the fact that the Whitley Circuit Court's docket sheet did not affirmatively show venue was not a proper ground upon which to object to its admissibility

in the LaGrange Circuit Court, and the objection on that ground was properly overruled.

The docket sheet was properly admitted in evidence, and the contents thereof sufficient to prove Kessler had been convicted of a felony.

The next issue to be considered is whether certain portions of Daniel Phillipson's testimony were erroneously admitted in evidence. During the State's case-in-chief Phillipson was allowed to testify, over objection, that on the evening of January 21, 1975, Kessler invited him to go "riding around", and that during the ride Kessler suggested they use the sledge hammer, screwdriver and pry bars to pry open the coin boxes of pay telephones. Phillipson also testified that Kessler attempted to pry open one pay phone but aborted the attempt because Phillipson was afraid they would be detected by passing motorists.

Kessler argues that it was improper to admit Phillipson's testimony because it constituted a statement of a co-conspirator received in evidence absent any independent proof of a conspiracy. Alternatively, Kessler argues that Phillipson's testimony amounted to a confession, and therefore could not be used as evidence against him (Kessler).

Kessler relies on the following principle as enunciated in *Patton, Nickelson* v. *State* (1961), 241 Ind. 645, at 648, 175 N.E.2d 11, at 13:

> "As this Court said in the case of *Dye* v. *State, supra* [1891], (130 Ind. 87, 88, 29 N.E.2d 771, 772):
> '. . . it is a rudimental principle that agency, conspiracy or the like, cannot be proved by the declarations of the alleged agent or conspirator. To make the admissions of an alleged conspirator evidence there must be some evidence, although it need not be strong, of the existence of the conspiracy . . . .' "

However, the above quoted principle is not applicable to this case. In *Patton* the defendants were charged with con-

spiracy to commit a felony, to-wit: robbery, thus placing the existence of a conspiracy directly at issue. Here, the issue was not whether a conspiracy existed, but whether Kessler possessed the requisite intent to commit burglary. *See, Hestand* v. *State* (1971), 257 Ind. 191, 273 N.E.2d 282. Furthermore, the principle applies only in cases where out-of-court statements of a co-conspirator are offered under an exception to the hearsay rule, not when the co-conspirator gives direct testimony.

Kessler's contention that Phillipson's testimony was a confession that could not be used as evidence against him (Kessler) is also unpersuasive. It does not conclusively appear from the record that Phillipson was charged at the time of Kessler's trial as an accomplice to any illegal act, but assuming, for the sake of argument, that he was, it is well settled under IC 1971, 35-1-31-3 (Burns Code Ed.), that an accomplice is competent to testify. Moreover, a conviction may be had on the uncorroborated testimony of an accomplice. *Coleman* v. *State* (1975), 264 Ind. 64, 339 N.E.2d 51; *Gertchen* v. *State* (1973), 158 Ind. App. 691, 304 N.E.2d 335; *Millington* v. *State* (1972), 154 Ind. App. 42, 289 N.E.2d 161 (transfer denied).

Kessler's final allegation of error is that the evidence is insufficient to prove he possessed the tools with the requisite intent to commit burglary. He bases this contention on the assumption that Phillipson's testimony regarding the plan to plunder pay telephones is the only evidence from which a felonious intent could be inferred. From this assumption, he contends that only if telephone booths were considered "structures" could intent to commit burglary be inferred from his conduct.[6] Kessler concludes by asserting that even if tele-

6. The relevant clause of the burglary statute, IC 1971, 35-13-4-4(b) (Burns Code Ed.), reads as follows:

"Whoever breaks and enters into * * * , or any building or structure other than a dwelling house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree, and upon conviction shall be imprisoned not less than

phone booths are classified as "structures", it is impossible to break and enter telephone booths because they are never closed, and adds that some pay telephones are not enclosed in booths at all.

Assuming, for the sake of argument only, that the trial judge believed Phillipson's testimony, and that telephone booths are not generally susceptible to being burglarized, Kessler's argument must nevertheless fail. The fact that Kessler possessed the tools with intent to commit theft does not necessarily preclude a finding that he also possessed them with intent to commit burglary. There is ample evidence, in addition to Phillipson's testimony, from which the trial judge, as finder of fact, could infer that Kessler possessed the tools with intent to commit burglary.

Kessler was observed in LaGrange, Indiana, parked in an alley behind the business district at 1:50 A.M., on January 22, 1975. Kessler lived in Columbia City, Indiana, at the time, and had no apparent reason to be in the alley. Tools suitable for use as burglary tools were readily accessible in the rear seat of the automobile. When Kessler observed a patrol car approaching, he exited the alley and attempted to leave La-Grange. When Deputy Stout signalled Kessler with red lights and siren, Kessler accelerated to 110-miles per hour in an attempt to escape.

From these facts the trial judge could infer that Kessler possessed the butcher knife, screwdriver, sledge hammer and pry bars with a general burglarious intent. *People* v. *Faginkrantz* (1961), 21 Ill. 2d 75, 171 N.E.2d 5; *People* v. *Esposito* (1959), 18 Ill. 2d 104, 163 N.E.2d 487; *State* v. *Bryan* (1942), 69 Ohio App. 306, 43 N.E.2d 625.

---

two [2] years nor more than five [5] years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period. Provided, however, That the court shall have power to suspend prison sentence and place the defendant on probation in accordance with existing law."

In this appeal, Kessler also attempts to assert that the statute under which he was convicted, IC 1971, 35-13-8-1, *supra,* is unconstitutional "for the reason that it violates the privilege and immunities clause of the United States and Indiana Constitutions \*\*\*." However, this issue has been waived because Kessler failed to present the constitutional argument to the trial court either at trial or with specificity in his motion to correct errors, and because he failed to present any supporting authority in his brief. *Rennert* v. *State* (1975), 263 Ind. 274, 329 N.E.2d 595; *Saloom* v. *Holder* (1973), 158 Ind. App. 177, 304 N.E.2d 217 (transfer denied). Ind. Rules of Procedures, Appellate Rule 8.3 (A) (7).

Kessler also attempts to assert that the tools were not proven to be burglary tools. However, he fails to support his assertion with any authority, and therefore this issue is also deemed waived. Appellate Rule 8.3 (A) (7), *supra.* In passing, we note that this contention is without merit. Two experienced police officers testified that the tools in Kessler's possession were suitable for use as burglary tools. Furthermore, it has generally been held that whether particular tools are to be considered as burglary tools is dependent upon the surrounding circumstances of their possession, especially the intent of the possessor. *See,* Annot. 33 A.L.R.3d 798, and cases cited therein.

No reversible error having been demonstrated, the judgment of conviction appealed from must be affirmed.

Affirmed.

Garrard, J., concurs; Staton, P.J., concurs in result, with opinion.

### Concurring Opinion

STATON, P.J.—I have concurred in result, since my rationale would differ in several ways from the majority opinion. First, the record from the Whitley Circuit Court is admissible on statutory grounds. The statute, IC 1971, 34-1-17-7 (Burns

Code Ed.), refers to the admissibility of ". . . complete copies of the records. . . ." This statutory phrase should be interpreted to mean complete for the evidentiary purpose for which the record is offered. The evidentiary purpose in Kessler's case was to prove a single element of the offense—that Kessler had previously been convicted of a felony. For this evidentiary purpose, the record offered in evidence was adequate and complete. The term "complete" as used in this statute should not be interpreted to mean the entire record when the entire record does not serve the evidentiary purpose.

Secondly, the tools found in Kessler's possession cannot be established as burglar tools by a police officer's characterization of them. Obviously, the tools found in Kessler's possession have many other proper uses. The evidence which establishes these tools as burglar tools is Daniel Phillipson's testimony coupled with other circumstantial evidence which ocurred prior to Kessler's arrest.

NOTE.—Reported at 355 N.E.2d 262.